UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| GORDON STRAKER | : | DOCKET NO. 2:08-CV-995 |
| | | SECTION P |
| VS. | : | JUDGE TRIMBLE |
| DIRECTOR OF IMMIGRATIONS AND CUSTOMS ENFORCEMENT | : | MAGISTRATE JUDGE KAY |

# REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed by Gordon Straker ("Petitioner") pursuant to 28 U.S.C. § 2241. [Doc. 1]. This matter has been referred to the undersigned for report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner has been under a final order of removal since January 4, 2007, and he has been in post-removal order detention since that time. In his petition, he challenges his continued detention as indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed in the reasonably foreseeable future. In response to the petition, the government argues that petitioner has hampered the removal process by failing to cooperate with the government's attempts to secure travel documents for Petitioner to be removed to St. Vincent-Grenadines.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of the petition. An evidentiary hearing was held on January 22, 2009. Doc. 18. Based on the evidence adduced at the hearing and the applicable law, it is RECOMMENDED that the petition for *habeas corpus* be DENIED.

BACKGROUND

Petitioner, a citizen of St. Vincent-Grenadines, became a lawful permanent resident of the U.S. on November 18, 1976. Doc. 1, at 2; Doc. 9, at 1. Petitioner received several convictions for drug offenses between 1993 and 2003. Doc. 1, at 2; Doc. 9, at 1-2. Petitioner was ordered removed from the United States on September 8, 2006. Doc. 1, at 3; Doc. 9, at 2. The order became administratively final on January 4, 2007. Doc. 1, at 3, Doc. 9, at 2. Petitioner filed a petition for review with the Second Circuit Court of Appeal on January 22, 2007, which was transferred to the Fifth Circuit on April 13, 2007. Doc. 1, at 3; Doc. 9, at 2. Although the case was temporarily staid while pending before the Second Circuit, the Fifth Circuit denied petitioner's application for stay. Doc. 1, at 3; Doc. 9, at 2. Petitioner's appeal remains pending as *Straker v. Mukasey*, 07-60285.

In his Petition for Writ of *Habeas Corpus*, petitioner asserts that he has cooperated fully with DHS officials. Petitioner claims that, despite his cooperation, he is being held indefinitely in violation the Supreme Court's mandate in the case *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S. Ct. 2491, 2498, 150 L. Ed. 2d 653 (2001).

In its Answer, the government supplied supplemental facts and exhibits.[1] Immigration and Customs Enforcement (ICE) forwarded a travel document request to the St. Vincent and Grenadines Consulate on January 10, 2007 and requested the assistance of its headquarters in the process on January 17, 2007. Doc. 9, Exhs. 9-10. ICE served petitioner with a Notice of File Custody Review on January 18, 2007. Doc. 9, Exh. 11. This notice notified petitioner that his continued custody and potential for supervised release would be reviewed on March 4, 2007. *Id.* On the same day, petitioner refused to assist ICE with certain paperwork regarding removal and

---

[1] These exhibits were accepted into the evidentiary record at the January 22, 2009 hearing without objection by

was served with, but refused to sign, a Warning for Failure to Depart (form I-229(a)), which notified petitioner that he could be subjected to criminal penalties for failure to assist ICE in obtaining a travel document.[2]  Doc. 9, Exh. 12.

On February 7, 2007, the Consulate for St. Vincent and Grenadines responded to ICE's request for travel documents by noting:

> In reference to your letter of 01/10/07, I spoke with Mr. Straker regarding his deportation. He has informed me that he has documents filed for another appeal. He further advised that he is sick and has asked for medical attention outside of the facility since the in-house doctor states that he is not qualified to deal with his illness. It will be appreciated if Mr. Straker can be allowed to see another doctor so that he can get the medical attention he needs.
>
> At this time I am not prepared to issue a travel document.

Doc. 9, Exh. 15.  The record shows that petitioner was instructed to call the Consulate on February 8, 2008, and that when petitioner did so, he told the Consulate of his medical issues and of his pending appeal.  Doc. 9, Exh. 20.  On March 6, 2008, petitioner was again told to call the Consulate.  However, the Consulate indicated on that date that it would not issue a travel document as long as petitioner has litigation pending.  *Id.*  On June 5, 2008, petitioner was instructed to call the Consulate, but on this occasion, he refused.  *Id.*

Petitioner's continued custody was again reviewed on April 17, 2007, January 3, 2008, and April 25, 2008.  Doc. 9, Exhs. 16-18.  Petitioner was issued additional I-229(a) forms for failure to aid in his removal on January 3, 2008, February 8, 2008, June 5, 2008, June 30, 2008, and July 30, 2008.  Doc. 9, Exh. 13.  In response to repeated requests to the Consulate for travel documents, the Consulate has indicated that travel documents will not be issued pending the

---

petitioner.
[2] Petitioner again refused to sign a form I-229 on December 11, 2007.

resolution of petitioner's medical problems and pending litigation.

At the evidentiary hearing on January 22, 2009, the court heard the testimony of Jamie Ballard, petitioner's deportation officer, and of petitioner. Additionally, the exhibits of the government, as described above, were entered into the record. Petitioner also entered several exhibits. The following issues were considered: whether there is a significant likelihood of removing petitioner in the reasonably foreseeable future; whether petitioner has been detained beyond what is reasonably necessary to secure his removal; and whether petitioner has taken steps to hamper the removal efforts of ICE.

The issue of whether petitioner has hampered attempts at his removal was thoroughly considered. For the government, Mr. Ballard testified that St. Vincent-Grenadines routinely issues travel documents. Mr. Ballard testified that he believed that the Consulate would issue a travel document to petitioner if petitioner indicated to the Consulate that his medical problems and appeal were no longer pending.[3] Mr. Ballard testified that petitioner had been instructed several times to contact the Consulate to indicate that he was requesting a travel document, but that each time that he did so, petitioner also notified the Consulate of his continued medical problem and of his outstanding appeal.

Petitioner testified that his refusal to sign the first I-229(a) form coincided with instructions to him that his case was within the time limits for appeal. Petitioner testified that the that he refused to sign the I-229(a) form a second time because his case was administratively staid while pending before the Second Circuit. Petitioner noted, and the record shows, that he signed all other I-229(a) forms. Petitioner also testified, as did Mr. Ballard, that he had placed

---

[3] At the hearing, there was some question as to whether the Consulate would issue petitioner a travel document if his medical condition were cleared although his appeal remained outstanding. Based on the discussion, *supra*, the court need not have a definitive answer to that question in order to resolve the issues before it. However, in light of the Consulate's February 7, 2007 letter [doc. 9, exh. 15], cited *infra*, it appears that the Consulate would not issue a

several calls to the Consulate at the direction of ICE. According to petitioner, he would indicate to the Consulate that ICE ordered him to call the Consulate to request travel documents. Additionally, petitioner would indicate that his medical problems and appeal remained outstanding.

With regard to petitioner's medical problems, petitioner introduced into evidence a document dated May 23, 2008 signed by the clinical director of the Federal Correctional Center, Oakdale, Louisiana. This document indicated that, after a review of petitioner's medical concerns, a decision to consult outside medical personnel had been deferred. Pl. Exh. 2. Petitioner submitted another form dated August 12, 2008 that indicated a decision to approve outside medical consultation had occurred. Pl. Exh. 6. Finally, a third form dated December 15, 2008 indicated a decision to approve outside consultation for general surgery. Mr. Ballard testified that, while ICE was not privy to any medical records or documents unless and until released to it by petitioner, based on discussions with the prison, petitioner was scheduled for surgery within two weeks of the hearing date (January 22, 2009).[4]

## LAW AND ANALYSIS

Following an order of removal, the Attorney General is given 90 days to effectuate the removal of the alien. 8 U.S.C. § 1231(a)(1)(A). However, "[a]n alien . . . who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ." 8 USC § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S. Ct. 2491, 2498, 150 L. Ed. 2d 653 (2001), the United States Supreme Court held that in order for post-removal detention under 8 U.S.C. §1231 to be constitutional, it must be limited "to a period reasonably necessary to bring

---

travel document if one, but not both, of petitioner's conditions were resolved.

about that alien's removal from the United States." The Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal. *Zadvydas,* 533 U.S. at 701, 121 S. Ct. at 2505, 150 L. Ed. 2d 653. It is a federal district court's duty to gauge, "[w]hether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal [and thus] whether the detention is, or is not, pursuant to statutory authority. *Id.* at 699, 121 S Ct. at 2503-04, 150 L. Ed. 2d 653.

The Court determined that the alien should bear the initial burden of proof in showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701, 121 S. Ct. at 2505, 150 L. Ed. 2d 653. In order to show that his removal is not likely to happen in the reasonable foreseeable future, petitioner must show that he has made a "full and honest effort to secure travel documents." *Davis v. Gonzalez,* 482 F. Supp. 2d 796, 802 (W.D. Tex. 2006) (citing *Lema v. INS,* 341 F.3d 853, 857 (9th Cir. 2003)). "[T]he risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich v. Immigration and Naturalization Service,* 329 F.3d 1057, 1060 (9th Cir. 2003); *see also Ayigba v. Young,* 2007 WL 2736678, *5 (W.D. La. 2007); *Rosario v. Gonzalez,* 2007 WL 1232207, *5 (W.D. La. 2007); *Amadi v. Young,* 2007 WL 855358, *3 (W.D. La. 2007). In *Pelich v. INS, supra,* the court denied the § 2241 petition, finding that the petitioner was "responsible for his plight" because he refused to complete the appropriate passport application necessary for his removal. Thus, when an alien is the cause of his own detention, he cannot assert a viable constitutional challenge to his indefinite detention because "the detainee controls the clock." *Lema,* 341 F.3d at 856 (citing *Pelich,* 329 F.3d 1057). Under such circumstances, the "detainee cannot convincingly argue that there is no

---

[4] For security reasons, Mr. Ballard did not provide the exact date of the surgery. Further, the court was satisfied

significant likelihood of removal in the reasonably foreseeable future . . . ." *Id.*

Once the alien has met his or her burden, the Government must respond with evidence sufficient to rebut that showing. *Zadvydas,* 533 U.S. at 701, 121 S. Ct. at 2505, 150 L. Ed. 2d 653. Finally, as the period of prior post removal confinement grows, what counts as the reasonably foreseeable future abates. *Id.* Thus, the *Zadvydas* decision "creates no specific limits on detention[—]'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (quoting *Zadvydas,* 533 U.S. at 701, 121 S. Ct. at 2505, 150 L. Ed. 2d 653).

Here, petitioner has been in post-removal-order detention since January 4, 2007, a period greater than six months. However, in order for petitioner to secure his release from custody, he must show that he has been detained beyond a period reasonably necessary to bring about his removal from the United States and that there is no significant likelihood of removal in the reasonably foreseeable future despite his full cooperation with the government's attempt to have him removed.

The government argues that petitioner has not fully cooperated with ICE's efforts to remove him because on June 5, 2008, he refused to call the Consulate, and on occasions when he did contact the Consulate, he indicated that ICE requested he seek travel documents and that his medical issues and appeal remain outstanding.

The court finds that petitioner has not obstructed his removal by failure to cooperate. Although there is evidence that he refused to call the Consulate on June 5, 2008, whether petitioner had agreed or not, he was (and is) under no obligation to materially misrepresent to the

---

with the general time provided.

Consulate the status of his medical and appeal issues. It is apparent from the evidence presented that so long as these matters remain outstanding, the Consulate will not issue travel documents whether petitioner asks for them or not. Thus, the court does not find that petitioner's refusal to call the Consulate on June 5, 2008 obstructed his removal for purposes of a *Zadvydas* analysis.

That is not to say, however, that petitioner has met his burden of demonstrating that there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 533 U.S. at 701, 121 S. Ct. at 2505, 150 L. Ed. 2d 653. It is apparent from the evidence presented, including correspondence with the Consulate and testimony of Mr. Ballard, that, in the absence of petitioner's health and appeal issues, the Consulate would issue travel documents for petitioner.

The undisputed evidence indicates that petitioner's health issues will be resolved through surgery within the next several weeks. Moreover, petitioner has failed to show that the Fifth Circuit will not issue a decision on his appeal within the reasonably foreseeable future. Based on the evidence presented to the court, it is significantly likely that petitioner's issues will be resolved within the reasonably foreseeable future. It is, thus, also significantly likely that the Consulate will issue petitioner travel documents within the reasonably foreseeable future. In light of these considerations, petitioner has not demonstrated that there is no significant likelihood of his removal in the reasonably foreseeable future.

## CONCLUSION

For the reasons discussed above, the undersigned finds that Petitioner has failed to carry his burden demonstrating that there is no likelihood of his removal in the reasonably foreseeable future or that he has been detained beyond what is reasonably necessary to bring about his removal from the United States.

Accordingly,

IT IS RECOMMENDED that this petition be DENIED AND DISMISSED without prejudice.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, February 3, 2009.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE